1

2

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

3

\* \* \*

4       GOLDEN ENTERTAINMENT, INC.,                Case No. 2:21-cv-00969-APG-EJY

5                        Plaintiff,
                                                   **ORDER**
6              v.

7       FACTORY MUTUAL INSURANCE
        COMPANY,
8
                         Defendant.
9

10          Pending before the Court is Plaintiff's Motion for Leave to File Second Amended and

11   Supplemental Complaint (the "Motion to Amend"). ECF No. 93.  The parties and the Court are well

12   versed in the facts of this case and its procedural history.  Thus, neither is discussed here.  In sum,

13   Plaintiff seeks to file its proposed second amended complaint (the "SAC") that (1) expands its breach

14   of good faith and fair dealing claim, and (2) otherwise supplements its existing allegations in support

15   of declaratory relief, breach of contract, violations of the Nevada Unfair Claims Practices Act, and

16   tortious breach of the covenant of good faith and fair dealing.  Defendant primarily argues the

17   amendment is futile throwing in prejudice and delay arguments at the close of its Opposition.  ECF

18   No. 99.

19   **I.      Discussion**

20          A.      <u>Legal Standard.</u>

21          The Court has broad discretion to grant an amendment to a complaint and may freely do so,

22   "when justice so requires." Fed. R. Civ. P. 15(a)(2).  Denial of a leave to amend may be justified if

23   the proposed amendment will cause undue delay, undue prejudice to the opposing party, a request

24   to amend is made in bad faith, a party has repeatedly failed to cure deficiencies, or the amendment

25   would be futile. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Leadsinger, Inc. v. BMG Music Publ'g*,

26   512 F.3d 522, 533 (9th Cir. 2008). Of these factors, "it is the consideration of prejudice to the

27   opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d

28   1048, 1052 (9th Cir. 2003).  "The party opposing amendments bears the burden of showing

1    prejudice, futility, or one of the other permissible reasons for denying a motion to amend." *Farina*

2    *v. Compuware Corp.*, 256 F.Supp.2d 1033, 1060 (D.Ariz.2003) (quoting *DCD Programs, Ltd. v.*

3    *Leighton*, 833 F.2d 183, 187 (9th Cir.1987)).  Motions to supplement pleadings under Federal Rule

4    of Civil Procedure 15(d) are analyzed under the same framework as a motion to amend centered on

5    the *Foman* factors.  *See Yates v. Auto City 76*, 299 F.R.D. 611 (N.D. Cal. 2013) (collecting cases).

6    Here, Defendant's opposition to Plaintiff's Motion to Amend is based primarily on futility.  ECF

7    No. 99 at 3-19.  Thus, the Court considers this issue first.

8              B.       Futility.

9              "[T]he test for futility is whether the amendment can survive a motion to dismiss under Rule

10   12(b)(6)."  *Fulton v. Advantage Sales & Mktg., LLC*, Case No. 3:11-cv-01050-MO, 2012 WL

11   5182805, at *3 (D. Or. Oct. 18, 2012).  "Ordinarily, courts will defer consideration of challenges to

12   the merits of a proposed amended pleading until after leave to amend is granted and the amended

13   pleading is filed."  *Fair Hous. Council of Cent. California, Inc. v. Nunez*, Case No. 1:10-cv-02073

14   LJO DLB, 2012 WL 217479, at *4 (E.D. Cal. Jan. 24, 2012); *see also Banc of California, Inc. v.*

15   *Farmers & Merchants Bank of Long Beach*, Case No. SACV 16-01601-CJC (AFMx), 2017 WL

16   2972338, at *1 (C.D. Cal. Apr. 19, 2017) ("resolving factual disputes and evaluating the merits of

17   proposed claims is generally inappropriate when considering motions for leave to amend."); *Green*

18   *Valley Corp. v. Caldo Oil Co.*, Case No. 09-cv-04028-LHK, 2011 WL 1465883, at *6 (N.D. Cal.

19   April 18, 2011) (noting "the general preference against denying a motion for leave to amend based

20   on futility.").

21                        1.       *Defendant's Condition Precedent Argument*.

22             Defendant first argues that Plaintiff did not satisfy a condition precedent, established by the

23   "all risk" policy (the "Policy") under which Plaintiff claims coverage is due, before filing suit.

24   Defendant argues that under the plain language of the Policy, Plaintiff's lawsuit is barred as a matter

25   of law.  ECF No. 99 at 9-12.  However, a review of the case law on which Defendant relies almost

26   universally represents decisions reached at the summary judgment stage of proceedings when

27   discovery is closed and all facts have been gathered.  *See* cases cited at *id*.  Obviously, the matter

28   before the Court is whether to grant a motion to amend, not summary judgment.  As Plaintiff argues,

1    Defendant seeks to "smuggle" a motion to dismiss into its Opposition to the Motion to Amend—a

2    tactic disfavored by the law. *See infra* § I.A.; ECF No. 101 at 4.

3            The Court finds it appropriate to leave to dispositive motion practice consideration of

4    whether Plaintiff was required to and did, in fact, satisfy a condition precedent to filing the

5    Complaint. This decision is supported by the law that disfavors merit-based decision to be made

6    based on a motion to amend, as well as by the fact that Plaintiff argues different facts and contrary

7    contract interpretation of the Policy. *Id.* at 6-8. *Ashcraft v. Welk Resort Grp., Corp.*, Case No. 2:16-

8    cv-02978-JAD-NJK, 2018 WL 357850, at *3 (D. Nev. Jan. 10, 2018) *citing, e.g., In re Dynamic*

9    *Random Access Memory (DRAM) Antitrust Litig.*, 536 F. Supp. 2d 1129, 1135-36 (N.D. Cal. 2008)

10   (deferring a "ruling on the sufficiency of the allegations … in light of the more liberal standards

11   applicable to motions to amend and the fact that the parties' arguments are better developed through

12   a motion to dismiss.").

13                            ii.        *The Physical Loss or Damage Requirement*.

14           Defendant next argues that Plaintiff's Motion to Amend is futile because all claims raised,

15   "with the exception of the limited communicable disease coverage[]," require a finding of "physical

16   loss or damage" as a prerequisite to coverage. ECF No. 99 at 13-14. Defendant says case law is

17   legion (with the exception of one outlier) that COVID-19 "does not[] and cannot cause physical loss

18   or damage" to property. *Id*. at 15. Defendant cites *Starr Surplus Lines Ins. Co. v. Eighth Judicial*

19   *Dist. Court*, 535 P.3d 254, 267 (Nev. 2023), which joined the "striking majority" of over 800 cases

20   finding COVID-19 does not cause property to suffer physical loss or damage.

21           Defendant also cites *Wynn Resorts, Ltd. v. Factory Mut. Ins. Co.*, Case No. 2:21-cv-01230-

22   CDS-EJY, 2023 WL 5319772, (D. Nev Aug. 10, 2023). That court framed the question before it as:

23   "[D]id the Covid 19 pandemic cause physical loss or damage to Wynn?" *Id*. at 3.

24           Most of Wynn's allegations and arguments related to "physical loss and damage"
             have been rejected by this court,[] courts in this district and others,[] and the Ninth
25           Circuit–to include a decision issued [what was then] two weeks ago. In *Oregon*
             *Clinic, PC v. Fireman's Fund Insurance Company*, 2023 WL 4854808, at *7 (9th
26           Cir. July 31, 2023), the Ninth Circuit affirmed a dismissal of a complaint with
             prejudice in the District of Oregon based on similar allegations.
27                                                    …
             [Because] the complaint fails to specifically identify what physical loss or damage
28           the droplets caused nor how the virus caused a "physical altercation" of the property

> … , it cannot meet its burden to allege coverage under the policies for any provision except for the provision for communicable disease, which is not at issue at this time.

*Id*. at 3-4.

Here, the SAC attempts to remedy deficient pleading by supplementing facts with information garnered through discovery that is alleged to demonstrate Plaintiff's losses are covered by the Policy. *See* ECF No. 93-1. Whether Plaintiff's pleading ultimately survives substantive motion practice does not alter the fact that Plaintiff's allegations are sufficient, at least facially, to plead potentially viable claims. The Court is not expressing an opinion on whether Plaintiff's SAC will survive a motion to dismiss or other dispositive motion practice. Rather, the Court finds that under the liberal standard applicable to motions to amend, and the preference to consider substantive arguments on a motion to dismiss, the Court properly allows Plaintiff's SAC to proceed.

### iii.    *Use of extrinsic evidence.*

Defendant's third argument pertains to what it says is Plaintiff's attempt to use extrinsic evidence to alter the plain meaning of the Policy. Defendant points out the document at issue (a PowerPoint training) was produced in another case (*Cinemark Holdings, Inc. v. Factory Mut. Ins. Co.*) filed in the Eastern District of Texas. ECF No. 99 at 17. Defendant further points to the court's decision in that case rejecting the use of extrinsic evidence in an attempt to create ambiguity and give the policy "a different meaning from that which its language imports." *Cinemark Holdings, Inc. v. Factory Mutual Insurance Company*, Civil Action No. 4:21-cv-00011, 2023 WL 4406021, at *2 (E.D. Tex. Jul. 7, 2023) (internal citation omitted). Plaintiff responds to Defendant's argument asserting that Nevada and the Ninth Circuit permits the use of extrinsic evidence of trade usage and custom to interpret disputed contract terms. ECF No. 101 at 9-10.

The Court finds the argument regarding extrinsic evidence is not one that is properly decided at this stage of proceedings and, therefore, is not preclusive of the SAC. That is, whether extrinsic evidence will be considered is a potentially dispositive issue that is more properly litigated through a motion to dismiss that fleshes out all law and facts that may pertain to this consideration. The Court will have to decide whether the language of the contract "reveals clear meaning viewed in its plain, ordinary, and popular sense" leading to the Court's inability "to look beyond the four corners

of the [P]olicy." *Starr Surplus*, 535 P.3d at 261.  To the extent there is a dispute regarding whether the language in the Policy is plain or ambiguous, the Court finds a motion to amend is not the vehicle for this determination.

Further, the Court notes that the use or exclusion of extrinsic evidence is not dispositive of whether Plaintiff should be permitted to file its proposed SAC.  That is, even if the Court does not consider the extrinsic evidence proffered, thus weakening the likelihood that coverage exists, Plaintiff's SAC seeks to amend the operative complaint to state an expanded tortious breach of the covenant of good faith and fair dealing claim based on what Plaintiff describes were uncontested amounts due under the Policy, but which payment was significantly delayed.  ECF No. 93-1 ¶¶ 272(i)-(xii).  Defendant does not address Plaintiff's expanded breach of good faith claim anywhere in its Opposition.  *Compare* ECF No. 99.  Plaintiff's revised good faith and fair dealing claims regarding the delayed payment does not rely on contract interpretation or extrinsic evidence to establish the meaning of the contract.

*iv.    The Nevada Supreme Court Starr Surplus Decision.*

Finally, Defendant argues the filing of Plaintiff's SAC is futile because Plaintiff is judicially estopped from abandoning its prior representation that the decision in *Starr Surplus* controls the outcome of this case.  ECF No. 99 at 20-24.  Judicial estoppel is an equitable doctrine that prevents a party from benefitting by taking one position, but then later seeking to benefit by taking a clearly inconsistent position.  *Hamilton v. State Farm Fire & Cas. Ins. Co.*, 270 F.3d 778, 782 (9th Cir.2001).  Three factors help determine whether judicial estoppel applies.  *Id.* (citing *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).  "'First, a party's later position must be clearly inconsistent with its earlier position.'"  *New Hampshire*, 532 U.S. at 750 (internal quote marks and citations omitted)).  "Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled."  *Id*. at 750 (internal quote marks and citation omitted).  The third consideration is "whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."  *Id*. at 751.  "These factors … [are not] inflexible

1   prerequisites or an exhaustive formula for determining the applicability of judicial estoppel [as

2   a]dditional considerations may inform the doctrine's application in specific factual contexts." *Id*.

3          To support its judicial estoppel argument Defendant points to several filings by Plaintiff the

4   first of which is its Motion for Continued Stay Pending Decision on Petition for Writ of Mandamus

5   in the Supreme Court of Nevada (ECF No.74).  In that Motion, Plaintiff (1) asked the Nevada

6   Supreme Court to consider key "issues of first impression" that were "highly relevant to" the instant

7   matter, and (2) argued the case outcome might be contrary to Defendant's position that Covid-19

8   cannot, as a matter of law, cause physical loss or damage to property.  ECF No. 99 at 21 *citing* ECF

9   No. 74 at 3, 4.  Defendant says that it opposed the continued stay, but the Nevada Supreme Court

10  was persuaded by Plaintiff's argument. *Id*. at 21-22.

11         Defendant further argues Plaintiff has repeatedly represented that Nevada state court

12  interpretation of key terms such as "physical loss and damage" would control in this case. *Id*. at 22

13  *citing* ECF No. 40 at 5-6 (Plaintiff's Motion to Stay) ("this Court should stay proceedings here to

14  provide Nevada state courts time to issue opinions on the key issues at stake: whether, as a matter of

15  law, COVID-19 and SARS-CoV-2 can cause physical loss or damage and, if so, whether the

16  Pollutants or Contaminants exclusion unambiguously applies.").[1]  Defendant's Motion to Stay (ECF

17  No. 40) was granted, but only in part.  ECF No. 66 at 2 ("Golden's motion to stay (ECF No. 40) is

18  GRANTED in part.  This case is stayed pending a decision by the Ninth Circuit in *Circus Circus*

19  *LV, LP v. AIG Specialty Ins. Co.*, Case No. 21-15367 (9th Cir.)").

20         Plaintiff now argues the decision in *Starr Surplus* is distinguishable from the issues in this

21  matter because language in the *Starr Surplus* policy "included the term 'virus,' [which] barred

22  coverage for virus-caused losses."  ECF No. 101 at 8-9 *citing Starr Surplus*, 535 P.3d at 269.

23  Plaintiff also argues the decision is *Starr* does "not foreclose all COVID-19 insurance actions[] as it

24  expressly instructed that courts 'must import context into the interpretation' of any insurance

25  policy." *Id*. at 9 *citing id*. at 267-68.

26

27

---

28  [1]      Defendant also points to a Motion to Certify a question to the Nevada Supreme Court (ECF No. 59), but that
    Motion was denied.  ECF No. 66.

1    The Court disagrees with Plaintiff's reliance on "context" as the court in *Starr Surplus* used

2    "context" to describe interpretation of a particular word or phrase by virtue of the sentence or

3    provision surrounding it, not external documents or information.  *See Starr Surplus*, 535 P.3d at 261,

4    267, 268 ("[w]ith the preposition 'to,' that relationship is generally on of direction. … Thus, in

5    context, 'to' indicates that the object of the preposition ((i.e. property) is 'the person or thing affected

6    by or receiving something.'"; "JGB contends that the COVID-19 virus does not fall within the type

7    of virus referenced in that definition, as the definition's surrounding context shows that the exclusion

8    is intended to preclude coverage" on in certain circumstances; "[n]o doubt, context is important in

9    interpreting policy language. … [For example,] the surrounding language in a pollution and

10   contamination exclusion … was enough[] to supply a reasonable interpretation of coverage.").

11   Nevertheless, the Court is persuaded that judicial estoppel does not apply because the United

12   States District Court for the District of Nevada was not persuaded to accept an earlier position taken

13   by Plaintiff that is inconsistent with its present position such that Plaintiff would gain an unfair

14   advantage over Defendant.  Plaintiff did not state the outcome of *Starr Surplus* was controlling, but

15   rather it was "highly relevant," which it remains.  Plaintiff cannot avoid the impact of the decision

16   in *Starr Surplus* given its holding that COVID-19 did not cause physical loss or damage, but only

17   economic damage—a decision that the court said "join[ed] a striking majority of our colleagues

18   across the country …."  *Id*. at 267.  While Plaintiff can attempt to distinguish the material facts of

19   this case from those in *Starr Surplus*, and thus limit this highly relevant decision, doing so is not so

20   contrary to Plaintiff's previous position that it warrants a finding of judicial estoppel.

21   In sum, the Court finds Defendant has not demonstrated that the Court should deny Plaintiff's

22   request to file its SAC based on futility.

23          C.       Plaintiff's Motion to Amend is Timely and Not Unduly Prejudicial.

24   Well established law demonstrates delay in filing a motion to amend is generally an

25   insufficient basis alone upon which to deny such a motion.  *Bowles v. Reade*, 198 F.3d 752, 758 (9th

26   Cir. 1999) ("Undue delay by itself, however, is insufficient to justify denying a motion to amend.").

27   Here, Plaintiff filed its Motion to Amend before the expiration of the deadline to do so.  ECF Nos.

28   84 at 3, 85.  Courts generally view a motion to amend filed before the deadline set out in the

1   scheduling order with a "liberal policy favoring amendments." *Kozlov v. Associated Wholesale*

2   *Grocers, Inc.*, 818 F.3d 380, 395 (8th Cir. 2016) *citing In re Graphics Processing Units Antitrust*

3   *Litig.*, 540 F. Supp. 2d 1085, 1090 (N.D. Cal. 2007).  Further, information relating to Plaintiff's new

4   allegations of bad faith, based on the purported delayed payment of supposed uncontested amounts

5   due under the Policy, was developed after this case commenced (albeit the delayed payment was

6   made in September 2022, and the Motion to Amend seeking to file the SAC was docketed in

7   November 2023).

8          Still, as the parties know, absent prejudice or a strong showing on the remaining factors

9   "there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence*

10  *Capital, LLC*, 316 F.3d at 1052.  Although Defendant argues this case has barely moved from the

11  pleading stage, the docket shows discovery commenced and is ongoing.  ECF No. 87.  Further,

12  discovery is not stayed.  The discovery period does not close until December 17, 2024.  ECF Nos.

13  84, 85.

14         The Court does note that a stay of discovery was first entered on August 17, 2021 (ECF No.

15  46).  A stay of the case was entered on March 30, 2022 (ECF No. 66).  On November 30, 2022, the

16  Court continued a stay of the case until August 21, 2023 or until the Supreme Court of Nevada

17  reached a decision in *Starr Surplus,* whichever date came first.  ECF No. 77.  Thus, while this case

18  commenced in federal court on May 20, 2021 (ECF No. 1), discovery was stayed for more than two

19  years.  While the Motion to Amend was not filed until three months after the stay was lifted, under

20  the circumstances of this case, this is not so great a delay as to warrant denial of the Motion.

21         The prejudice raised by Defendant is limited to arguing it will have to prepare a third motion

22  to dismiss if amendment is granted.  ECF No. 99 at 24-25.  In reality, Defendant filed one motion to

23  dismiss that was denied without prejudice on March 30, 2022 (ECF No. 66).  Defendant says it

24  drafted a second motion to dismiss, but did not file the motion because Plaintiff sought to amend its

25  Compliant leading to a stipulation—that is, an agreement between Plaintiff and Defendant—to

26  extend the date by which Plaintiff would file a second amended complaint to November 20, 2023.

27  ECF No. 88.  This same stipulation gave Defendant 45 days after the Court granted or denied

28  Plaintiff's motion for leave to amend to file a second motion to dismiss.  ECF No. 88.  Thus, despite

now arguing that it will be prejudiced by having to draft a third motion to dismiss, this is exactly what Defendant agreed to do when it entered into the stipulation.

The Court finds Defendant demonstrates neither undue delay nor prejudice warranting denial of Plaintiff's Motion for Leave to Amend.[2]

**II.      Order**.

IT IS HEREBY ORDERED that the Motion for Leave to File Second Amended and Supplemental Complaint (ECF No. 93) is GRANTED.

IT IS FURTHER ORDERED that Plaintiff shall prepare a final version of its Second Amended and Supplemental Complaint and file the same no later than **February 20, 2024**.

IT IS FURTHER ORDERED that Defendant's pleading responsive to Plaintiff's Second Amended and Supplemental Complaint will be due **April 5, 2024**.  If Defendant files a motion in response to the Second Amended and Supplemental Complaint, Plaintiff's response to such motion is due **April 26, 2024**.  The reply is due **May 10, 2024**.

IT IS FURTHER ORDERED that absent a stipulation by the parties, discovery is **not** stayed during this briefing period.

Dated this 13th day of February, 2024.

_____
ELAYNA J. YOUCHAH
UNITED STATES MAGISTRATE JUDGE

---

[2]      Despite granting Plaintiff's Motion for Leave to file Second Amended and Supplemental Complaint, the Court takes this opportunity to point out (as it recently did during the hearing on Defendant's Motion for Protective Order) that Plaintiff misrepresents the Court's holding in *Treasure Island, LLC v. Affiliated FM Insurance Co.*, Case No.  2:20-cv-00965-JCM-EJY, 2023 WL 6295500 (D. Nev. Sept. 26, 2023).  Plaintiff states the Court held FM "has been prohibited from even arguing that the presence of communicable disease does not cause physical loss or damage."  ECF No. 93-1 ¶ 36 *citing Treasure Island*, 2023 WL 6295500 at **4-5.  However, what the Court stated was that the defendant was "precluded from arguing physical loss or damages cannot be caused by a communicable disease or that there is no circumstance under which Defendant may find coverage reaches physical loss or damage arising from a communicable disease." *Treasure Island*, 2023 WL 6295500 at *5.  The Court strongly recommends Plaintiff take care not to continue to gloss the Court's words to mean something other than what was plainly stated.