UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Golden Entertainment, Inc., | Case No. 2:21-cv-00969-CDS-EJY |
| Plaintiff | **Order Granting in Part Defendant's Motion to Dismiss the Second Amended Complaint and Granting Motion for Leave** |
| v. | |
| Factory Mutual Insurance Company, | |
| Defendant | [ECF Nos. 111, 121] |

This is an insurance dispute between plaintiff Golden Entertainment, Inc., and defendant Factory Mutual Insurance Company (FMIC). FMIC moves to dismiss the second amended complaint (SAC) arguing that this action violates Federal Rules of Civil Procedure 8 and 10 and is precluded by the Supreme Court of Nevada's decision in *Starr Surplus Lines Inc. Co. v. Eighth Jud. Dist. Ct.* ("*JGB*"), 535 P.3d 254 (Nev. 2023). Mot., ECF No. 111. Golden Entertainment opposes the motion, arguing that FMIC fails to challenge any of its bad faith allegations for failing to pay them under their policy's "communicable disease" coverage, and further that the insurance policy at issue here contains a unique "communicable disease" provision that covers "physical loss or damage," making this case, and policy, distinct from JGB. Opp'n, ECF No. 114.[1] The motion is fully briefed. *See* reply, ECF No. 116.[2] For the reasons set forth herein, I grant in part defendant's motion to dismiss the SAC.

I.     Relevant background information[3]

There is no dispute that Golden Entertainment had an insurance policy (hereinafter "the Policy") with FMIC that was effective from December 1, 2019, through December 1, 2020. ECF

---

[1] Golden Entertainment filed its public opposition at ECF No. 113, and a sealed version at ECF No. 114. The court only cites to the sealed version as that it what it relied upon in resolving this motion.
[2] FMIC also filed a motion for leave to file a document associated with the motion to dismiss, citing additional authority. ECF No. 121. This motion is also fully briefed. *See* opp'n, ECF No. 122; Reply, ECF No. 123. This motion is granted as FMIC has provided the court with persuasive authority.
[3] For the purposes of ruling on the motions to dismiss, I "assume [the] veracity" of all "well-pleaded factual allegations" and then "determine whether they plausibly give rise to an entitlement to relief."

No. 105 at 2; ECF No. 111 at 2 (acknowledging policy). There is also no dispute that this was an "All-Risk" policy. ECF No. 105 at 2 (alleging All-Risk policy), 15 ("This Policy 'covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE . . . .'" (quoting Policy, 111-2 at 1)); ECF No. 111 at 2 (citing to "ALL RISKS" policy).

The All-Risk Policy covers "against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy." Def.'s Ex. 1, ECF No. 111-2 at 9. The exclusions to the policy are listed as: (1) indirect or remote loss or damage; (2) interruption of business, except to the extent provided by this Policy; (3) loss of market or loss of use; (4) loss or damage or deterioration arising from any delay; (5) mysterious disappearance, loss or shortage disclosed on taking inventory, or any unexplained loss; (6) loss from enforcement of any law or ordinance; and (7) loss resulting from the voluntary parting with title or possession of property if induced by any fraudulent act or by false pretence. *Id.* at 19.

An additional exclusion states that "unless directly resulting from other physical damage not excluded by [the Policy]":

> 1) **contamination**, and any cost due to **contamination** including the inability to use or occupy property or any cost of making property safe or suitable for use or occupancy. If **contamination** due only to the actual not suspected presence of **contaminant(s)** directly results from other physical damage not excluded by this Policy, then only physical damage caused by such **contamination** may be insured. This exclusion D1 does not apply to radioactive contamination which is excluded elsewhere in this Policy.

*Id.* at 22 (emphasis in original).

The Policy also provides for "Other Additional Coverages[.]" *See id.* at 28–45. As relevant here, such additional coverage provisions address "communicable diseases" (*id.* at 30–31) and law and ordinance (*id.* at 35–36). The "communicable diseases" section reads as follows:

---

*Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). My factual summary thus takes the plaintiff's well-pled factual allegations as true.

> If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
>
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the reasonable and necessary costs incurred by the Insured at such location with the actual not suspected presence of communicable disease for the:
>
> 1) cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property; and
>
> 2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of communicable diseases on insured property.
>
> . . .
>
> This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of communicable disease.

*Id.* at 30–31 (emphasis removed).

The relevant part of the law and ordinance provision reads as follows:

> This Policy covers the costs as described herein resulting from the Insured's obligation to comply with a law or ordinance, provided that:
>
> 1) such law or ordinance is enforced as a direct result of insured physical loss or damage at an insured location;
>
> 2) such law or ordinance is in force at the time of such loss or damage; and
>
> 3) such location was not required to be in compliance with such law or ordinance prior to the happening of the insured physical loss or damage.

*Id.* at 35–36.

The Policy also contains a "TIME ELEMENT" section. *Id.* at 46–51. It states, in part, that the Policy

> insures TIME ELEMENT loss, as provided in the TIME ELEMENT COVERAGES, directly resulting from **physical loss or damage of the type insured**:
>
> 1) to property described elsewhere in this Policy and not otherwise excluded by this Policy or otherwise limited in the TIME ELEMENT COVERAGES below;
>
> 2) used by the Insured, or for which the Insured has contracted use;
>
> 3) while located as described in the INSURANCE PROVIDED provision or within 1,000 feet/300 metres thereof, or as described in the TEMPORARY REMOVAL OF PROPERTY provision; or
>
> 4) while in transit as provided by this Policy, and
>
> 5) during the Periods of Liability described in this section, provided such loss or damage is not at a contingent time element location.

*Id.* at 46 (emphasis added).

Included in the "Additional Time Element" section of the Policy is an "interruption by communicable disease provision." *Id.* at 67. It reads as follows:

> If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
>
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the Actual Loss Sustained and EXTRA EXPENSE incurred by the Insured during the PERIOD OF LIABILITY at such location with the actual not suspected presence of communicable disease.
>
> This Extension will apply when access to such location is limited, restricted, or prohibited in excess of 48 hours.

INTERRUPTION BY COMMUNICABLE DISEASE Exclusions: As respects INTERRUPTION BY COMMUNICABLE DISEASE, the following additional exclusions apply:

This Policy does not insure loss resulting from:

1) the enforcement of any law or ordinance with which the Insured was legally obligated to comply prior to the time of the actual spread of communicable disease.

2) loss or damage caused by or resulting from terrorism, regardless of any other cause or event, whether or not insured under this Policy, contributing concurrently or in any sequence of loss.

*Id.*

## II. Legal standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. On a motion to dismiss, the court accepts all allegations of material fact as true and construes the pleadings in the light most favorable to the non-movant. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). However, the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Finally, dismissal can be "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990) (citation omitted).

Although I must accept as true the factual allegations set forth in the SAC in deciding a motion to dismiss, I may also consider documents incorporated by reference in the complaint without converting the defendants' motion to dismiss into a motion for summary judgment.

*United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). A document may be incorporated by reference into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *Id.* The defendant may offer such a document, and the court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss. *Id.*

II.  Discussion[4]

    A.  **Golden Entertainment fails to plausibly allege a breach of contract claim related to the sections of the Policy that require physical loss or damage for coverage to be triggered.**

The starting point for the interpretation of any contract, including insurance policies, is with its plain language. *McDaniel v. Sierra Health & Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002). An insurance policy's terms are to be viewed "in their plain, ordinary[,] and popular sense." *Siggelkow v. Phoenix Ins. Co.*, 846 P.2d 303, 304 (Nev. 1993). A potential for coverage under the policy "only exists when there is arguable or possible coverage." *United Nat'l Ins. Co. v. Frontier Ins. Co.*, 99 P.3d 1153, 1158 (Nev. 2004). Interpreting insurance contract terms in Nevada is normally a job for the court. *See Century Sur. Co. v. Casino W., Inc.*, 329 P.3d 614, 616 (Nev. 2014).

The heart of this action's dispute is whether Golden Entertainment is entitled to "indemnification under the [Policy's] broad and overlapping coverages because SARS-CoV-2 and/or/ COVID-19 cause[d] physical loss or damage of the type insured." ECF No. 105 at 10, ¶ 26. As the starting point of contract interpretation is the plain language, I first turn to the coverage provision of the Policy. Here, the Policy requires there to be "physical loss or damage" to the

---

[4] I considered the Policy between Golden Entertainment and FMIC in deciding the motion to dismiss as it was extensively discussed in the SAC and attached thereto, so it is properly incorporated by reference. Further, FMIC offered a copy of the same policy and Golden Entertainment does not dispute its authenticity. I also considered Exhibits C, E, and I attached to FMIC's response to the motion (ECF No. 114) as they are referenced in the SAC. However, the court did not consider Exhibits B, D, F, G, H, J, K, L, and M as they are neither properly incorporated by reference nor subject to judicial notice, and I decline to convert the motion into one for summary judgment at this time. Fed. R. Civ. P. 12(d) (when considering materials outside the pleadings on a motion to dismiss, the motion must be treated as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity present all the material that is pertinent to the motion.").

6

covered properties for coverage to be triggered. *See* "DECLARATIONS," Def.'s Ex. 1, ECF No. 111-2 at 9. Golden Entertainment argues it showed FMIC the actual, not just suspected, presence of COVID-19 and that caused a loss so the Policy's "all risks" provision was triggered. *See, e.g.*, ECF No. 114 at 6 ("Golden supplied to FM a proof of loss and 'evidence of hundreds of positive COVID-19 tests amongst [Golden's] employees,' and the locations at which the employees worked." (quoting SAC, ECF No. 105 at 60, ¶ 247)).

But the Supreme Court of Nevada (NSC) resolved whether the presence of the COVID-19 virus caused physical loss or damage to property in the *JGB* case. 535 P.3d. 254. In that unanimous decision, the NSC rejected the insured's argument that the COVID-19 virus damaged property by "alter[ing] the surfaces or air of the covered property," therefore triggering the insurance policy's "all-risk" provision. *Id.* at 260. Instead, the court held that the term "'[p]hysical' has to mean something," *id.* at 263 (citing *Wakonda Club v. Selective Ins. Co. of Am.*, 973 N.W.2d 545, 549, 552 (Iowa 2022)), so the physical loss or damage provisions of an insurance policy require that "the property must receive or be affected by actual physical harm[,]" *id.* at 264. The Ninth Circuit agrees. *See Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 892 (9th Cir. 2021) (interpreting California law and holding that the phrase "direct physical loss of or damage to" property requires physical alteration of the property). Golden Entertainment does not argue that the virus was merely present or somehow altered the covered properties. Instead, it argues that it had employees who tested positive for COVID-19 and provided proof of their positive tests, constituting a loss and therefore triggering coverage under the Policy's "communicable disease" provision. *See generally* ECF No. 114 at 10–14. But this is the same "presence of Covid-19 constitutes physical damage" argument, just worded slightly differently.[5] More importantly, this argument is at odds with the SAC, which pleads actual physical loss and

---

[5] Indeed, in paragraph 26 of the SAC, Golden Entertainment includes much of the same language regarding COVID-19 causing "physical loss and damage because, among other things, tangible, physical droplets containing SARS-CoV-2 reside in (and become part of) the air and on the fixtures and surfaces of property, thus altering, damaging, and rendering the physical property unfit and unsafe for its intended use if not mitigated." ECF No. 105 at 10, ¶ 26; *see also id.* at 24, ¶ 77; *id.* at 25, ¶ 81; *id.* at 26, ¶ 86.

7

damage,[6] as well as the Policy's language requiring actual physical loss or damage to the property, which Golden Entertainment recognized when it filed the SAC. *Compare* ECF No. 105 at 58–59, ¶ 236 ("the FM All Risk Policy recognizes that **losses caused by the physical loss or damage to property** that results from a communicable disease may also be insured under other provisions." (emphasis added)) and *id.* at 59, ¶ 238 ("coverage for **physical loss and damage and/or resulting Time Element loss**, from or caused by communicable disease away from Covered Properties or Contingent Time Element Locations, is subject to the policy limits associated with the coverage or coverages implicated."), *with* ECF No. 111-2 at 9 ("This Policy covers property, as described in this Policy, against ALL RISKS OF PHYSICAL LOSS OR DAMAGE, except as hereinafter excluded, while located as described in this Policy"); *id.* at 25 ("This Policy includes the following Additional Coverages for insured physical loss or damage."); *id.* at 64 (Law and Ordinance provision requiring physical loss or damage); *id.* at 46–51 (Time Element provision discussing physical loss or damage requirement); *id.* at 56 (stating the Time Element Exclusion does not insure "[a]ny loss during any idle period, including but not limited to when production, operation, service or delivery or receipt of goods would cease, or would not have taken place or would have been prevented due to . . . strikes or other work stoppage . . . and any other reason other than **physical loss** or damage insured under this Policy.").

"To prevail on a claim for breach of contract, the plaintiff must establish (1) the existence of a valid contract, (2) that the plaintiff performed, (3) that the defendant breached, and (4) that the breach caused the plaintiff damages." *Iliescu, Tr. of John Iliescu, Jr. & Sonnia Iliescu 1992 Fam. Tr. v. Reg'l Transp. Comm'n of Washoe Cnty.*, 522 P.3d 453, 458 (Nev. Ct. App. 2022). There is no dispute there was an insurance contract between the parties, but Golden Entertainment has not sufficiently alleged that the covered properties suffered physical loss or damage as to trigger coverage under the Policy's business interruption, time element, or any other provision of the

---

[6] *See, e.g.*, SAC, ECF No. 105 at 4–10, ¶¶ 4, 6, 8, 19, 21, 26.

Policy that require physical loss or damage to trigger coverage, so they have failed to plausibly allege a breach of contract claim.

That leaves the Policy's communicable disease provision, which does not specifically require physical loss or damage to the covered properties.[7] There is no dispute that COVID-19 is a communicable disease, as set forth in the SAC, Golden Entertainment was required comply with state closure orders, which were instituted to prevent or slow the spread of COVID-19 in March of 2020. *See* ECF No. 105 at 4, ¶ 5. Golden Entertainment also alleges it provided proof of employees who tested positive for COVID-19 (i.e., actual presence of the virus) in March of 2021. *Id.* at 60, ¶ 247. Despite this, Golden Entertainment alleges that FMIC is liable for breach of contract because it "contends it is not obligated to pay Golden for [Golden's] losses" and that FMIC has not and refuses to pay for Golden Entertainment's losses suffered because of COVID-19. *See generally* ECF No. 105 at 67–69. However, there appears to be no dispute that FMIC paid Golden Entertainment a $1 million dollar payout under the communicable disease provision. *Id.* at 13, ¶ 43. Golden Entertainment argues that this payment was not issued, however, until September 14, 2022, over a year after providing relevant documentation to FMIC. *Id.* at 47, ¶ 188.

At issue for Golden Entertainment is that it does not address how this delay in payment constitutes a breach of the contract. Nowhere does Golden Entertainment point to provisions of the Policy that were breached as a result of the delayed payment, and nowhere does it provide points and authorities that suggest a delay in payment can automatically be considered a breach of contract. Without evidence or argument supporting that these delays violate language in the contract, a breach of contract claim here is untenable. *See, e.g., Sierzega v. Country Preferred Ins. Co.*, 650 F. App'x 388, 390–91 (9th Cir. 2016) ("An insured cannot maintain a breach of contract claim for a delay in payment absent a provision in the policy requiring payment within a

---

[7] I do not find this provision to be ambiguous. "If an insurance policy is unambiguous, the Supreme Court of Nevada interprets it according to the plain meaning of its terms." *Cohen v. Berkley Nat'l Ins. Co.*, 2017 U.S. Dist. LEXIS 144633, at *6 (D. Nev. Sept. 6, 2017) (granting defendant insurer's motion to dismiss based upon an exclusion in the policy at issue) (quoting *Powell v. Liberty Mut. Fire Ins. Co.*, 252 P.3d 668, 672 (2011)).

particular time frame." (citing *Thompson v. Progressive Ins.*, 2013 WL 210597, at *1 (Nev. Jan. 17, 2013))). Accordingly, FMIC's motion to dismiss Golden Entertainment's breach of contract claim is granted.

### B. Golden Entertainment's bad faith claim for relief fails in part.

Nevada has long held that insurance contracts have an implied covenant of good faith and fair dealing between both parties. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993). An insurer fails to act in good faith when it refuses "without proper cause" to compensate the insured for a loss covered by the policy. *Id.* A violation of this implied covenant gives rise to a bad faith tort claim when a special relationship exists between the parties, such as insured and insurer. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324–26 (Nev. 2009). Generally, to prevail on a bad faith claim, the plaintiff must show the insurer unreasonably denied or delayed payment of a valid claim and did so with actual or implied awareness that there was no reasonable basis to deny the claim. *Guar. Nat. Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). "[A]n insurer is not liable for bad faith for being incorrect about policy coverage so long as the insurer had a reasonable basis to take the position that it did." *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994).

Golden Entertainment's bad faith claim against FMIC as it relates to the sections of the Policy that require physical loss or damage to trigger coverage cannot survive because FMIC had a reasonable basis to deny coverage under all sections of the Policy except the communicable disease provision. It was not until the fall of 2023 that Nevada decided the question of whether COVID-19 caused physical loss or damage to property. *See Igartua v. Mid-Century Ins. Co.*, 262 F. Supp. 3d 1050, 1054 (D. Nev. 2017) ("Where the undisputed evidence shows that the insurer had some reasonable basis for acting as it did, there is no bad faith."); *Powers v. United Servs. Auto. Ass'n*, 962 P.2d 596, 604 (1998) ("To establish a prima facie case of bad-faith refusal to pay an insurance claim, the plaintiff must establish that the insurer had no reasonable basis for disputing coverage, and that the insurer knew or recklessly disregarded the fact that there was

no reasonable basis for disputing coverage."). Without demonstrating FMIC had an obligation to pay under the provisions requiring "physical loss or damage," nor a reasonable basis for disputing coverage, there is no prima facie case of bad faith.

However, the communicable disease provision did not have the physical loss or damage requirement. Golden Entertainment argues that, although it was ultimately paid $1 million under the communicable diseases provision of the Policy, it took FMIC more than a year to pay the amount. It is reasonable for there to be relatively short delays in claims processing. *See Sierzega*, 650 F. App'x at 389 (finding that insurer's delay was reasonable when it paid insurance claim after obtaining the other driver's policy limits and the insured's medical records showing that her medical costs exceeded the other driver's policy limits). However, it is unreasonable for insurers "to drag out investigations over long periods of time." *See Hall v. Liberty Mut. Gen. Ins. Co.*, 2017 WL 4349225, at *5 (D. Nev. Sept. 29, 2017) (citing *Hackler v. State Farm Mut. Auto. Ins. Co.*, 210 F. Supp. 3d 1250, 1256 (D. Nev. 2016) (finding delay of years) and *Est. of Lomastro v. Am. Fam. Ins. Grp.*, 195 P.3d 339, 352 (Nev. 2008) (finding delay of ten months)). Insurers likewise act unreasonably if they "sit on claims without rendering a decision when they possess the requisite information for deciding whether to pay." *Id.* (citing *Hat v. Depositors Ins. Co.*, 339 F. App'x 764, 764–65 (9th Cir. 2009)). Golden Entertainment has alleged that FMIC waited unreasonably for over a year despite having the information that established Golden Entertainment was entitled to payment under the communicable diseases provision of the Policy. This is a sufficiently plausibly allegation to support a bad faith claim. Thus FMIC's motion to dismiss is granted in part and denied in part. It is granted with prejudice as to all bad faith allegations that FMIC acted in bad faith in denying coverage under the Policy for the sections that require physical loss or damage, but denied as to the communicable disease provision.

### C. The alleged violations of Nevada's Unfair Claims Practices Act claim fails.

Golden Entertainment alleges that FMIC violated NRS 686A.310, also known as the Nevada Unfair Claims Practices Act (NUCPA). ECF No. 105 at 68. As a threshold matter, this

claim fails because it does not identify which provision of NUCPA FMIC allegedly violated. Courts frequently dismiss complaints that fail to identify which portion of the unfair claims practices act is alleged to have been violated. *See, e.g., McKinnon v. Hartford Ins. Co. of the Midwest*, 2013 WL 1088702 (D. Nev. March 14, 2013).

Further, this SAC alleges "oppression, fraud, and/or malice." *Id.* at 69, ¶ 297. Under Rule 9(b), a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). This means the plaintiff must allege "the who, what, when, where, and how of the misconduct charged," including what is false or misleading about a statement, and why it is false. *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)). Alleged facts constituting the fraud or mistake must be pled with specificity: conclusory allegations are insufficient. Fed. R. Civ. P. 9(b); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient.").

The allegations in the SAC are unspecific and conclusory and therefore insufficient under Rule 8 of the Federal Rules of Civil Procedure. Moreover, the allegations of fraud fail to meet the heightened pleading requirement under Rule 9(b) of the Federal Rules of Civil Procedure. Accordingly, the motion to dismiss the Nevada's Unfair Claims Practices Act claim for relief is granted.

### D.  The request for declaratory relief fails.

Golden Entertainment also seeks declaratory relief regarding the parties' "rights and duties" under the Policy. ECF No. 105 at 67. This claim is entirely duplicative of Golden Entertainment's claims for damages. Claims for declaratory relief frequently accompany claims for breach of contract in insurance disputes and are used to determine whether coverage exists in a given insurance policy. *El Capitan Club v. Fireman's Fund Ins. Co.*, 89 Nev. 65, 506 P.2d 426, 428 (1973); *see also De La Paz Enterprises v. Nat'l Fire Ins. Co. of Hartford*, 2009 WL 10693512, at *5 (D. Nev.

Feb. 10, 2009). However, "the declaratory relief statute should not be used for the purpose of anticipating and determining an issue which can be determined in the main action," but is instead most appropriate when it would be beneficial to make an early determination of coverage under the policy. *El Capitan Club*, 506 P.2d at 428 (quotations omitted).

The parties are wholly in agreement that there was a contract. The remaining issues—the rights and duties under the contract—are the same that are at issue in the main action. *See Rosas v. GEICO Cas. Co.*, 365 F. Supp. 3d 1123, 1128 (D. Nev. 2019) ("[T]he dispute in this case is about what specifically is owed under that contract, an issue that can be determined through Rosas's main contractual action."). Therefore, the declaratory judgment action is dismissed.

### E.  Leave to amend is denied in part.

If the court grants a motion to dismiss for failure to state a claim, leave to amend should be granted unless it is clear that the deficiencies of the complaint cannot be cured by amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992). Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).

Golden Entertainment has already amended the complaint on two occasions so the court declines to give leave to amend to those claims a third time. The claims dismissed in this order are done so with prejudice. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009) ("[W]here the Plaintiff has previously been granted leave to amend and has subsequently failed to add the requisite particularity to its claims, [t]he district court's discretion to deny leave to amend is particularly broad." (quotation omitted)).

However, Golden Entertainment is ordered to file a Third Amended Complaint (TAC) setting forth *only* the claim for bad faith related to the Policy's communicable disease provision by January 22, 2025. Once the TAC is filed, the parties are directed to attend a settlement conference with the magistrate judge.

### III.  Conclusion

IT IS HEREBY ORDERED that defendant's motion to dismiss **[ECF No. 111] is GRANTED in part and denied in part**. Except for Golden Entertainment's bad faith claim regarding the communicable disease provision, all of Golden Entertainment's claims are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that defendant's motion to dismiss is **DENIED** as to the communicable disease provision bad faith claim. Golden Entertainment is ordered to file a Third Amended Complaint (TAC) setting forth *only* the claim for bad faith related to the Policy's communicable disease provision **by January 22, 2025**. Following the filing of the TAC, this matter is referred to the magistrate judge for a settlement conference.

IT IS FURTHER ORDERED that defendant's motion for leave to file supplemental documentation **[ECF No. 121] is GRANTED.**

Dated: January 8, 2025

_____
Cristina D. Silva
United States District Judge