UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA

| | |
|---|---|
| Golden Entertainment, Inc., | Case No. 2:21-cv-00969-CDS-EJY |
| Plaintiff | **Order Granting in Part Defendant's Motion to Dismiss, Denying Defendant's Motion for Order to Show Cause, and Denying as Moot Plaintiff's Motion to Strike** |
| v. | |
| Factory Mutual Insurance Company, | |
| Defendant | [ECF Nos. 136, 143, 144] |

This is an insurance dispute between plaintiff Golden Entertainment, Inc., and defendant Factory Mutual Insurance Company (FMIC). FMIC moves to dismiss or, in the alternative, strike the third amended complaint (TAC) under Federal Rules of Civil Procedure 41(b) for failure to comply with a court order; Rule 8 because the TAC is neither "short and plain" nor "simple, concise, and direct;" Rule 9(b) for failure to meet the heightened pleading standard; and Rule 12(f) "because the TAC contains immaterial, redundant, impertinent, and/or scandalous material." Mot. to dismiss, ECF No. 136. It argues that that much of the TAC includes claims already dismissed with prejudice by this court. *Id.* at 2. This motion is fully briefed. *See* Opp'n, ECF No. 139; Reply, ECF No. 140.[1] For the reasons discussed below, I grant in part and deny in part this motion.

Additionally, Golden Entertainment has submitted for in camera review a supplemental disclosure. ECF No. 142. FMIC moves for an order to show cause, arguing that the ECF No. 142 submission was an improper ex parte communication. ECF No. 143 at 2.[2] Although I deny this motion, I order Golden Entertainment to correct its mistake as detailed below.

---

[1] Golden Entertainment moves to strike Section IV of FMIC's reply or, in the alternative, submit a sur-reply. ECF No. 143. In its response, FMIC withdraws Section IV of its reply. ECF No. 145 at 2. Therefore, Golden Entertainment's motion is denied as moot and I do not consider the proposed sur-reply.
[2] This motion is fully briefed. *See* Opp'n, ECF No. 146; Reply, ECF No. 147.

I.  Background

Because this case bears a long history largely irrelevant to the present motion, I incorporate by reference the background section as set out in my order partially dismissing the second amended complaint. *See* ECF No. 126 at 1–6. Relevant here, in that same order, I stated:

> Golden Entertainment has already amended the complaint on two occasions so the court declines to give leave to amend to those claims a third time. The claims dismissed in this order are done so with prejudice. . . .
>
> However, Golden Entertainment is ordered to file a Third Amended Complaint (TAC) setting forth *only* the claim for bad faith related to the Policy's communicable disease provision . . . .

*Id.* at 13–14 (emphasis in original). The "communicable disease" provision states the following:

> If a location owned, leased or rented by the Insured has the actual not suspected presence of communicable disease and access to such location is limited, restricted or prohibited by:
>
> 1) an order of an authorized governmental agency regulating the actual not suspected presence of communicable disease; or
>
> 2) a decision of an Officer of the Insured as a result of the actual not suspected presence of communicable disease,
>
> this Policy covers the reasonable and necessary costs incurred by the Insured at such location with the actual not suspected presence of communicable disease for the:
>
> 1) cleanup, removal and disposal of the actual not suspected presence of communicable diseases from insured property; and
>
> 2) actual costs of fees payable to public relations services or actual costs of using the Insured's employees for reputation management resulting from the actual not suspected presence of communicable diseases on insured property.
>
> . . .
>
> This Additional Coverage does not cover any costs incurred due to any law or ordinance with which the Insured was legally obligated to comply prior to the actual not suspected presence of communicable disease.

Policy, ECF No. 128 at 61–62 (emphasis removed).[3]

---

[3] I note that the TAC does not comply with the local rules of this district. "Exhibits and attachments must not be filed as part of the base document in the electronic filing system. They must be attached as

2

I summarized the surviving claim as follows: "although [Golden Entertainment] was ultimately paid $1 million under the communicable diseases provision of the Policy, it took FMIC more than a year to pay the amount." ECF No. 126 at 11. I noted that "it is unreasonable for insurers 'to drag out investigations over long periods of time'" and insurers may not "'sit on claims without rendering a decision when they possess the requisite information for deciding whether to pay.'" *Id.* (quoting *Hall v. Liberty Mut. Gen. Ins. Co.*, 2017 WL 4349225, at *5 (D. Nev. Sept. 29, 2017)). I ultimately found that "Golden Entertainment has alleged that FMIC waited unreasonably for over a year despite having the information that established Golden Entertainment was entitled to payment under the communicable diseases provision of the Policy" which "is a sufficiently plausibl[e] allegation to support a bad faith claim." *Id.* I ordered the filing of the TAC to clear the docket of the other claims and allow for litigation to proceed on this singular issue. Golden Entertainment filed its TAC on January 22, 2025. *See* ECF No. 128.

## II.  Legal standard

The Federal Rules of Civil Procedure require a plaintiff to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Dismissal is appropriate under Rule 12(b)(6) when a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Twombly*, 550 U.S. at 555. Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility

---

separate files." LR IC 2-2(a)(3)(A). And "[a]n index of exhibits must be provided." LR IA 10-3(d). Golden Entertainment is a sophisticated party represented by counsel and has already filed several complaints. Multiple filings fail to comply with this rule. Counsel is cautioned that future filings that fail to adhere to this court's local rules will be automatically stricken.

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

III.     Discussion

FMIC seeks dismissal of the TAC and separately requests an order to show cause regarding the ex parte communication with the court. I address each in turn.

    A. Motion to dismiss

        *1. Bad faith claim*

FMIC moves to dismiss based on Federal Rules of Civil Procedure 8, 9, 10, 12(f), and 41(b), proffering different arguments for each. ECF No. 136 at 3. It points to specific allegations in the TAC that it states violates the court's order by (1) attempting to backdoor previously dismissed "physical loss or damages" issues, (2) discussing third-party locations and the "statistically certain" presence of Covid-19 that fall outside the scope of the communicable diseases provision, (3) including irrelevant and immaterial allegations, (4) including unnumbered paragraphs, and (5) re-raising "malice, fraud and/or oppression" allegations previously denied with prejudice by the court.[4] *Id.* at 4–9. FMIC asserts that these violations of the court's order limiting the scope of Golden Entertainment's claims to a single, narrow issue violates Rule 41(b) and warrants dismissal. *Id.* at 9–12. It also argues that the length of the complaint, the unnumbered paragraphs, and the "(1) immaterial background information that expands far beyond the limited scope allowed by this Court, and (2) assertions about claims that this Court has already dismissed with prejudice" violate the Rule 8 requirement that the complaint "contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief" and that "[e]ach allegation must be simple, concise, and direct[,]" and the Rule 10 requirement that a "party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." *Id.* at 12 (quoting Fed. R. Civ. P.

---
[4] I address the oppression, fraud, and/or malice issue separately.

8(a)(2), 8(d), 10(b)). *Id.* at 12–14. FMIC separately argues that, if not dismissed, the TAC should be stricken in whole or in part under Rule 12(f) for including redundant and immaterial information. *Id.* at 14–15.

In response, Golden Entertainment points to the stringency and fact-dependence of a bad faith claim as its reasons for including so much information.[5] Engaging with FMIC's objections regarding the extent and language of the complaint, Golden Entertainment argues that its TAC is so long because it must set out lengthy factual allegations in service of its claim that FMIC acted in bad faith, that include:

> (1) what the Communicable Disease provisions cover and the requirements for obtaining coverage; (2) the communicable disease at issue (COVID-19) and how it works; (3) facts showing that FM[IC] knew or should have known the Communicable Disease coverage requirements had been met (*e.g.*, COVID-19 was present at Golden's locations and government orders restricted access to Golden's locations); (4) facts showing that FM[IC] knew or should have known Golden incurred losses and expenses far exceeding the Communicable Disease coverage limits; (5) because of (1) through (4), it was unreasonable for FM to dispute the actual presence of COVID-19 at Golden's locations and that the Communicable Disease coverage limits had been met; (6) because of (1) through (4) it was unreasonable for FM[IC] to drag out its investigation and demand burdensome and redundant "proof" (not required by the Policy) of Golden's claim and losses; and (7) FM[IC] was unreasonable for failing to pay the Communicable Disease coverage limits for more than a year and a half after having in its possession the extensive documentation it requested (but did not actually need or even bother to look at) showing that coverage was indisputably owed and FM[IC] was required to pay Golden.

Opp'n, ECF No. 139 at 8. Although it at times includes extraneous information, I am satisfied with Golden Entertainment's explanation that this information was all necessary to support its

---

[5] Nevada has long held that insurance contracts have an implied covenant of good faith and fair dealing between both parties. *Pemberton v. Farmers Ins. Exch.*, 858 P.2d 380, 382 (Nev. 1993). An insurer fails to act in good faith when it refuses "without proper cause" to compensate the insured for a loss covered by the policy. *Id.* A violation of this implied covenant gives rise to a bad faith tort claim when a special relationship exists between the parties, such as insured and insurer. *Allstate Ins. Co. v. Miller*, 212 P.3d 318, 324–26 (Nev. 2009). Generally, to prevail on a bad faith claim, the plaintiff must show the insurer unreasonably denied or delayed payment of a valid claim and did so with actual or implied awareness that there was no reasonable basis to deny the claim. *Guar. Nat.Ins. Co. v. Potter*, 912 P.2d 267, 272 (Nev. 1996). "[A]n insurer is not liable for bad faith for being incorrect about policy coverage so long as the insurer had a reasonable basis to take the position that it did." *Pioneer Chlor Alkali Co. v. Nat'l Union Fire Ins. Co.*, 863 F. Supp. 1237, 1242 (D. Nev. 1994).

bad faith claim, and thus do not find that the complaint's content violates my order. Even though, as detailed below, I do not find that all of the allegations presented in the TAC survive, there was nothing so unreasonable about these claims that I find would constitute a violation of my order. Therefore, FMIC's motion, to the extent it seeks dismissal or striking under Rules 8, 10, 12(f), and 41(b) is denied.

However, in its motion, FMIC also argues briefly that "Golden's conclusory allegations about the supposed 'statistical certainty' of the virus'[s] presence violate that order. 'Statistical certainty,' of course, is only an artful way of saying 'very strongly suspected.'" *Id.* at 7. It states that "even a very strong suspicion does not – and cannot – meet the Communicable Disease provisions' requirement of '**actual not suspected presence**' – a requirement expressly recognized by this Court." *Id.* (emphasis in original). Inexplicably, FMIC engages with this argument in its motion only to the extent that this is proof that "Golden has expressly violated this Court's order." *Id.* Not until its reply does FMIC appear to seek a merits determination on these arguments. *See* ECF No. 140 at 2. Though presented strangely in the original motion, I find that it was sufficiently raised as an independent issue.[6]

The plain language of the the communicable disease provision is clear: it applies only "[i]f a location owned, leased or rented by the Insured has the *actual not suspected* presence of communicable disease and access to such location is limited, restricted or prohibited by" orders of government agencies or the decision of an officer of the insured. ECF No. 128 at 61. This means that the insured party—in this case Golden Entertainment—must have had actual knowledge of the presence of Covid-19 for this provision to apply, and must have informed FMIC of this fact. What Golden Entertainment claims in its TAC is the following:

---

[6] It should be noted that not only did Golden Entertainment have the opportunity to object to this argument in the reply, but it actually *did* object to parts of the reply specifically for raising new issues— just not this one. *See* Mot. to strike, ECF No. 143. However, although I find that it was properly raised in the motion, even if it weren't, I nonetheless find that sua sponte dismissal for failure to state a claim as to this issue is warranted. *See Shoop v. Deutsche Bank Nat. Tr. Co.*, 465 F. App'x 646, 647 (9th Cir. 2012) (acknowledging district court's power to sua sponte dismiss an action for failure to state a claim).

64. On April 20, 2020, [FMIC] wrote to Golden conceding that COVID-19 meets the definition of a communicable disease under the Policy.

65. The actual presence of COVID-19 at Golden's Covered Properties has been confirmed, as numerous Golden employees have tested positive for COVID-19 and were confirmed to have been on Golden's Covered Properties while infected.

66. The actual presence of COVID-19 at Golden's Covered Properties was also known to FM[IC] *with statistical certainty* on the basis of overwhelming scientific consensus and governmental directives. Indeed, [FMIC]'s decision to close its own offices by April 2020 indicates that [FMIC] itself recognized COVID-19's omnipresence and the danger it created.

67. On April 28, 2022, [FMIC] wrote to Golden conceding that COVID-19 had been confirmed at Golden's Covered Properties.

ECF No. 128 at 18 (emphasis added). It is telling that Golden Entertainment uses the term "statistical certainty" instead of "known" or "confirmed." Golden Entertainment may have strongly suspected the presence of Covid-19 on its insured properties, but Golden Entertainment did not know for a fact that it was there when it first raised the issue with FMIC, at least as presented in the TAC. Thus, the tortured "statistical certainty" argument it propounds is simply insufficient to meet the plain meaning of the language of the communicable diseases provision. *See, e.g., Broadwall Mgmt. Corp. v. Affiliated FM*, 2022 WL 3030315, at *8 (S.D.N.Y. Aug. 1, 2022) (finding that "actual not suspected" presence requires "confirmed instances of COVID-19 on specific insured properties" (citing *Spirit Realty Cap., Inc. v. Westport Ins. Corp.*, 568 F. Supp. 3d 470, 475 (S.D.N.Y. 2021)). Golden Entertainment may not argue that the presence of Covid-19 in its insured properties was a "statistical certainty" or utilize any other similar phrase to that effect. I grant FMIC's motion to dismiss with prejudice as to Golden Entertainment's "statistical certainty" argument.

The relevant timeline for its claims therefore begins upon verified proof of the existence of Covid-19 on its properties. And to this extent, Golden Entertainment's claim survives this motion. As is alleged in the complaint:

> 20. . . . Golden provided detailed documentation in March and April 2021 that proved the presence of COVID-19 on and around Golden's Covered Properties.
>
> 21. Yet, [FMIC] failed even to look at Golden's irrefutable documentation until January 2022. Worse yet, despite [FMIC] having this extensive proof in its possession that COVID-19 in fact was present at all of Golden's properties, [FMIC] sought dismissal with prejudice from this Court for Golden's Communicable Disease coverages claim, incorrectly contending that Golden could never even allege the presence of COVID-19 on and around its Covered Properties.
>
> 22. After ignoring Golden's files that proved coverage for nine months, [FMIC] finally conceded its obligation to pay Golden's Communicable Disease coverages claim, but even then inexcusably delayed payment for another eight months.
>
> 23. On September 14, 2022, [FMIC] finally issued Golden a $1 million payment under the Onsite Communicable Disease Coverage, 30 months after Golden notified [FMIC] of its claim and more than 18 months after Golden provided extensive documentation of employees who tested positive for COVID-19 while on Golden's insured properties.
>
> 24. In sum, [FMIC] inexcusably delayed evaluating and paying Golden's claim, misrepresented the scope of coverage under the Policy, and misrepresented that Golden could never allege coverage under any of the Policy's provision, including Communicable Disease coverages.

TAC, ECF No. 128 at 8–9. Additionally, it alleges:

> 90. On March 3, 2021, Golden responded to [FMIC], providing a Sworn Proof of Loss pertaining to its losses, evidence of hundreds of positive COVID-19 tests among its employees, and numerous government orders evidencing restrictions imposed on Golden's properties.

91.  Despite the detailed proof of loss and accompanying documentation Golden offered, over a month later [FMIC] still refused to provide a formal coverage decision. Instead, [FMIC] sought additional information pertaining to the Communicable Disease coverage—virtually all of which Golden had previously provided and [FMIC] ignored. In so doing, [FMIC] perpetuated a scheme to pepper policyholders like Golden with boilerplate requests for "additional" information, knowing that it would not pay and/or would seek dismissal in court, no matter how detailed the proof of loss.

92.  On April 22, 2021, although not required under the Policy but in response to [FMIC]'s request, Golden provided via secure link additional documentation of the actual presence of COVID-19 at its property, including positive lab reports for each Golden location and supporting documentation regarding when the person was last present at the location, dates that access to Golden's properties were restricted, Golden's interest in each location, and full addresses of Golden's properties. [FMIC] did not respond.

93.  After a more than year of inaction by [FMIC], Golden was forced to proceed with litigation against [FMIC] to obtain the coverage Golden was owed.

ECF No. 128 at 23. In these paragraphs, Golden Entertainment sets out that it obtained proof of positive Covid-19 tests among its employees at the insured properties, that it provided that proof to FMIC, and that FMIC failed to timely address the claim. Instead of addressing this in its motion, FMIC's first attempt to do so came in Section IV of its reply (ECF No. 140 at 10–13), before Golden Entertainment objected (ECF No. 143) and FMIC chose to withdraw the argument (ECF No. 145). With nothing else before me, and with this claim fully set out in the TAC, I deny the motion to the extent it seeks dismissal of the bad faith claim based on the communicable diseases provision. However, seeing as this claim has only been set out insofar as it relates to FMIC's alleged unreasonable delay, Golden Entertainment is limited to pursuing its bad faith claim under this theory only.

### 2. *Oppression, fraud, and/or malice*

The parties also argue at length about the "oppression, fraud and/or malice" component of the TAC that Golden Entertainment alleges in support of punitive damages. Before addressing

the substance of the complaint's allegations, FMIC insists that my previous order dismissing the SAC quashed any further oppression, fraud, and/or malice allegation raised in future complaints, and uses this as fuel to argue that the TAC violated my order and should be dismissed. ECF No. 136 at 14; ECF No. 140 at 7. In my previous order, I only addressed the failure to adequately plead oppression, fraud, and/or malice with regard to the Nevada Unfair Claims Practices Act. ECF No. 126 at 11–12. This should have been clear to FMIC given that it is specifically—and exclusively—discussed in the subsection entitled "The alleged violations of Nevada's Unfair Claims Practices Act claim fails[,]" and not the separate subsection "Golden Entertainment's bad faith claim for relief fails in part." *Id.* at 10–11. On top of that, in its reply, FMIC decided it appropriate to state the following: "The first reference in the SAC (¶297) appears in connection with the dismissed statutory claims. However, the second appears as part of the bad faith claim. (SAC, ¶306, erroneously referred to by the Court as ¶69.)[.]" As hard as this court may try, it has and will inevitably make grammatical, spelling, and other scrivener mistakes. When necessary, parties should not hesitate to point these out and ask for clarification as to the court's intended meaning. It would behoove them, however, to (1) consider whether pointing out an error simply for the sake of its existence is a worthwhile use of space in their brief and (2) ensure that they are, in fact, correct. I did not cite to paragraph 69, as FMIC incorrectly corrects, I cited to *page* 69 of the SAC. *Page* 69 of the SAC, under the heading "Violations of the Nevada Unfair Claims Practices Act, NRS 686A.310[,]" states the following: "[FMIC]'s conduct constitutes oppression, fraud, and/or malice. Specifically, [FMIC], by acting as alleged above, consciously and without cause disregarded Golden's rights in bad faith during a time of crisis as Golden sustained substantial losses." This is what I referred to in my order. I did not touch on the oppression, fraud, and/or malice allegations as they relate to the bad faith claim.[7] I do so, for the first time, now.

---

[7] In its response to the motion, Golden Entertainment suggests that I kept the oppression, malice, and/or fraud claim related to bad faith "intact." ECF No. 12. Although technically true, it having been left unaddressed does not mean that I affirmatively determined that Golden Entertainment had, in fact raised a sufficient claim to warrant punitive damages. It was not addressed in any detail in that order because

In the TAC, Golden Entertainments describes FMIC's alleged bad faith conduct as "part of a broader pattern and practice by which [FMIC] handled similar claims. [FMIC] consistently rejected proofs of loss and denied similar coverage claims in other cases involving first-party claims for business interruption losses resulting from the COVID-19 pandemic, despite receiving extensive documentation supporting such losses." ECF No. 128 at 8. It cites to three cases purportedly involving other companies associated with FMIC. *Id.* (citing *ITT Inc. v. Factory Mut. Ins. Co.*, 2022 WL 1471245, at *4 (D. Conn. May 10, 2022), *aff'd*, 2023 WL 1126772 (2d Cir. Jan. 31, 2023); *AU Health Sys., Inc. v. Affiliated FM Ins. Co.*, 593 F. Supp. 3d 1344, 1351 (S.D. Ga. 2022); and *AU Health Sys., Inc. v. Affiliated FM Ins. Co.*, 2023 WL 6323114, at *6 (S.D. Ga. Sept. 28, 2023)); *see also id.* at 22 (citing *Jordache Enters., Inc. v. Affiliated FM Ins. Co.*, 2022 WL 986109, at *1, *7 (S.D.N.Y. Mar. 31, 2022)). Further, Golden Entertainment asserts that FMIC "has repeatedly represented that no insurance coverage was owed to its policyholders under any coverage grant in the Policy, including the Communicable Disease coverages, and sought dismissals with prejudice for Communicable Disease coverage claims brought by its insureds due to the actual presence of communicable disease . . . ." *Id.* at 27.

In its motion, amid repeated insistence that the TAC violates Rule 8, FMIC manages to do *just* enough to raise the argument that it is not lost merely because I denied the Rule 8 dismissal request, asserting that the "allegations . . . remain unspecific and conclusory and therefore insufficient under . . . the heightened pleading requirement under Rule 9(b)." ECF No. 136 at 14. Discussed in much more depth in its reply, FMIC argues that none of the cases to which Golden Entertaiments cites in its TAC are supportive of its allegation of a broad pattern of bad faith conduct. ECF No. 140 at 8. It points out that all of the other cases raised and rejected arguments akin to those raised earlier in this suit about Covid-19 being omnipresent or

---

FMIC failed to challenge Golden's prayer for punitives in earnest. Indeed, a review of the motion to dismiss the SAC references punitives twice, in single sentences. *See* ECF No. 111 at 5 ("The punitive damages claim is also implausible."); *id.* at 24 ("That timeline also bars the plaintiff's punitive damages claim in connection with the CD coverages under NRS 42.005."). FMIC did not address punitives at all in its reply. Thus, as discussed further in this order, I address this issue *for the first time* now.

11

universally known and therefore having an "actual presence." *Id.* at 8–9 (citing *Jordache*, 2022 WL 986109; *ITT Inc. v. Factory Mut.*, 2022 WL 1471245; *AU Health Sys. v. Affiliated FM*, 593 F. Supp. 3d 1344; and *AU Health Sys. v. Affiliated FM*, 2023 WL 6323114).

In its response, Golden Entertainment points to allegations in its TAC that FMIC failed to adequately investigate its claims because it did not even look at Golden Entertainment's proof confirming the presence of Covid-19 for nine months as Golden Entertainment faced greater and greater financial hardship, and "even then, demanding further redundant financial information and delaying payment for an additional ten months[,]" describing this as oppression. ECF No. 139 at 13 (citing TAC, ECF No. 128 at 23–27). It also argues that by pleading that it never owed anything under the policy provisions and seeking dismissal with prejudice, FMIC acted with malice and fraud. *Id.* Finally, Golden Entertainment points to where in the TAC it alleges that FMIC:

> engaged in despicable conduct with a conscious disregard of Golden's rights ("malice") by "orchestrat[ing] a strategy to deny all coverage through unreasonable and unjustified delay, repeatedly and needlessly requesting burdensome (and often redundant) information from its policyholders, including Golden, in an attempt to run out the clock while [FMIC] simultaneously asked courts (including this Court) to rule no Communicable Disease coverage could ever be owed."

*Id.* (quoting TAC, ECF No. 128 at 22). It asserts that it has sufficiently pled with specificity the exact "time, place and nature" of FMIC's "oppressive, malicious, and/or fraudulent activity." *Id.* at 14 (quoting *Moore v. Kayport Package Express*, 885 F.2d 531, 540 (9th Cir. 1989)).

I find that Golden Entertainment has alleged enough for its oppression, malice, and/or fraud argument to survive as to the "unjustified delay" but not as to there having been a broad pattern of conduct by FMIC involving other lawsuits. In the TAC, Golden Entertainment alleges it provided documentation in March and April 2021 proving the presence of Covid-19 at its properties, but FMIC "failed even to look at Golden's irrefutable documentation until January 2022." ECF No. 128 at 8. Then, "On September 14, 2022, [FMIC] finally issued Golden a $1 million payment under the Onsite Communicable Disease Coverage, 30 months after Golden

notified [FMIC] of its claim and more than 18 months after Golden provided extensive documentation of employees who tested positive for COVID-19 while on Golden's insured properties." *Id.* at 9; *see also id.* at 23–26, 28. Additionally, Golden Entertainment argues that FMIC's "conduct is part of a systematic claims-handling practice and procedure that [FMIC] deployed across myriad COVID-19 pandemic-related claims" by repeatedly "representing that no insurance coverage was owed to its policyholders under any coverage grant in the Policy, including the Communicable Disease coverages, and" moving for "dismissals with prejudice for Communicable Disease coverage claims brought by its insureds due to the actual presence of communicable disease—thereby refusing to provide the very coverage [FMIC] has now conceded Golden is owed when COVID-19 is present on insured locations." *Id.* at 27 (citing *Jordache*, 2022 WL 986109, at *1, *7 and *ITT*, 2022 WL 1471245, at *4). It alleges that FMIC "misrepresented in 2021 that Golden could never allege coverage under *any* of the policy's provisions" and improperly moved to dismiss *all* of its claims with prejudice, including the communicable disease provision claim, before later reversing course and paying the $1 million under the policy. *Id.* at 3. These allegations provide sufficient detail to allow this oppression, malice, and/or fraud claim to proceed, even under a heightened pleading standard.

      Golden Entertainment repeatedly asserts that there was "a systematic claims-handling practice and procedure that [FMIC] deployed across myriad COVID-19 pandemic-related claims" where FMIC would argue that no insurance coverage was owed and seek dismissals with prejudice in court to that effect. ECF No. 128 at 27. However, Golden Entertainment's only proof appears to be several other lawsuits. Those cases are not sufficient as proof, demonstrating only that FMIC defended similar lawsuits in an uncertain time and ultimately appears to have lost on its argument that the communicable diseases provisions were inapplicable.[8] Given the

---

[8] Even in its own TAC, Golden Entertainment fails to describe the cases in a way that suggests they do, in fact, support its argument. *See* ECF No. 128 at 27. It describes *Jordache* as "rejecting AFM's motion to dismiss Communicable Disease coverages without leave to amend, and the case settling within days of policyholder amending complaint to allege actual presence of COVID-19 on covered property[,]" 2022 WL 986109, at *1, *7, and *ITT* as "FM contending that despite the actual presence of COVID-19 on

uncertainty in the law at the time, just as Golden Entertainment has not committed fraud or acted with malice for repeatedly attempting to raise the same (or loosely rehashed) arguments about knowledge of Covid-19's omnipresence constituting actual presence—despite it having been raised and rejected over and over again—I do not see how FMIC's similar defenses in multiple cases show a pattern indicative of malice or fraud. Therefore, Golden Entertainment's argument about there being a pattern of fraudulent or malicious litigation tactics from FMIC is dismissed.

### B. Motion for order to show cause

Golden Entertainment filed an in camera supplemental LR 7.1-1 disclosure to this court. *See* ECF No. 142. FMIC moves for an order to show cause, arguing that the submission was an improper ex parte communication. ECF No. 144. Specifically, it argues that "[w]hen it comes to LR 7.1-1 certificates of interested parties, the proper way to protect information is through the sealing process, not unilateral use of in camera submission." *Id.* at 3 (citing *G&G Closed Cir. Events, LLC v. Fanmio Inc.*, 2024 WL 4228835, at *1 (D. Nev. Sept. 18, 2024)). In response, Golden Entertainment cites several cases insisting that in camera review is proper in these circumstances. ECF No. 146 at 2 (citing *V5 Techs. v. Switch, Ltd.*, 334 F.R.D. 306, 308, 311–12 (D. Nev. 2019), *GoTV Streaming, LLC v. Netflix, Inc.*, 2023 WL 4237609, at *8–14 (C.D. Cal. May 24, 2023), and *In re Valsartan NNitrosodimethylamine (NDMA) Contamination Prods. Liab. Litig.*, 405 F. Supp. 3d 612, 618–19 (D.N.J. 2019)). *V5 Technologies*, however, discusses whether litigation funding is within the scope of discovery, but is silent as to whether an in camera submission is the appropriate tool to ensure the court is informed of any potential bias. 334 F.R.D. at 311–12. The other cases fare no better. *See* Reply, ECF No. 147 at 3. I therefore agree with FMIC that the in camera submission was not the proper avenue for submission of this information to the court. I do not, however, find that an order to show cause is necessary here as the error was harmless. Thus, the motion is denied.

---

covered property, Communicable Disease coverage was not owed, but belatedly paying Communicable Disease coverage limits ten months later[,]" 2022 WL 1471245, at *4. *Id.*

Because the submission is improper, Golden Entertainment is ordered to (1) file an updated certificate of interested parties under seal, and (2) file an accompanying motion to seal. This will be reviewed and addressed by the court.

IV.  Conclusion

IT IS HEREBY ORDERED that FMIC's motion to dismiss [ECF No. 136] is **GRANTED in part and DENIED in part**, as follows:

a. FMIC's motion, to the extent it seeks dismissal or striking under Rules 8, 10, 12(f), and 41(b) is **DENIED**.

b. FMIC's motion, to the extent it seeks dismissal of Golden Entertainment's "statistical certainty" argument, is **GRANTED**. This argument is **DISMISSED with prejudice**.

c. FMIC's motion, to the extent it seeks dismissal of the bad faith claim based on the communicable diseases provision, is **DENIED**. However, seeing as this claim has only been set out insofar as it relates to FMIC's alleged unreasonable delay, Golden Entertainment is limited to pursuing its bad faith claim under this theory only.

d. FMIC's motion, to the extent it seeks dismissal of Golden Entertainment's allegation of oppression, malice, and/or fraud under Rule 8 is **DENIED**.

e. FMIC's motion, to the extent it seeks dismissal of Golden Entertainment's allegation of oppression, malice, and/or fraud as to unjustified delay is **DENIED**.

f. FMIC's motion, to the extent it seeks dismissal of Golden Entertainment's allegation of oppression, malice, and/or fraus as to there having been a pattern of conduct as evidenced by filings in other lawsuits is **GRANTED**. This argument is **DISMISSED with prejudice**.

IT IS FURTHER ORDERED that Golden Entertainment's motion to strike [ECF No. 143] is DENIED as moot.

IT IS FURTHER ORDERED that FMIC's motion for order to show cause **[ECF No. 144] is DENIED.** However, no later than August 4, 2025, Golden Entertainment is ordered to (1) file an updated certificate of interested parties under seal, and (2) file an accompanying motion to seal. This will be reviewed and addressed by the court.

Dated: July 21, 2025

_____
Cristina D. Silva
United States District Judge